UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                              Case No. 14-cr-20241
v.                           Hon. Matthew F. Leitman

DARRELL JOHNSON,

    Defendant.
_____/

**OPINION AND ORDER DENYING (1) DEFENDANT'S ORAL MOTION FOR JUDGMENT OF ACQUITTAL AND (2) DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL (ECF ## 69, 80)**

**INTRODUCTION AND PROCEDURAL HISTORY**

On March 27, 2014, Detroit Police Officers arrested Defendant Darrell Johnson ("Johnson") and his girlfriend Crystal Cooper ("Cooper") at their home in Detroit, Michigan. The next day, officers executed a search warrant at the home and discovered a loaded .357 Magnum revolver in a nightstand drawer in an upstairs bedroom. Johnson was subsequently charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Johnson was initially tried before a jury in September 2014, but the Court declared a mistrial after the jury could not reach a verdict. (*See* ECF #46.) Johnson was re-tried in December 2014.

1

In order to convict Johnson of being a felon in possession of a firearm, the government had to prove that (1) Johnson had a previous felony conviction, (2) the revolver had travelled in interstate commerce, and (3) Johnson knowingly possessed the firearm. *See, e.g., United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir. 1998) (stating elements). The parties stipulated that the first two elements were satisfied (*see* Trial Transcript, ECF #77 at 33-34, Pg. ID 772-773); therefore the only issue at trial was whether Johnson knowingly possessed the revolver.

The government's theory at trial was that Johnson and Cooper shared the bedroom in which the revolver was found, that Johnson had control over the nightstand in which the gun was found, and that Johnson constructively possessed the firearm. Johnson countered that Cooper's sister, Jessica Short ("Short"), lived in the bedroom where the gun was found, that he did not live in or have control over that bedroom or its contents, and that the gun belonged to Short or one of her male friends.

At the close of the government's case, Johnson orally moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (*See* the "Oral Acquittal Motion," Tr., ECF #78 at 4, Pg. ID 964.) Johnson argued that the evidence, even viewed in the light most favorable to the government, was insufficient to establish beyond a reasonable doubt that he constructively possessed the gun. (*See id.* at 4-9, Pg. ID 964-969.) The Court took the Oral Acquittal

Motion under advisement. (*See id.* at 13-14, Pg. ID 973-974.)

On December 4, 2014, the jury found Johnson guilty. (*See* ECF #68.) On December 16, 2014, Johnson filed a renewed motion for a judgment of acquittal. (*See* ECF #69.) Johnson thereafter replaced his appointed counsel with retained counsel and sought permission to file a supplemental brief in support of his motion. (*See* ECF #74.) The Court granted that request and set a briefing schedule for Johnson's renewed motion on January 29, 2014. (*See* ECF #75.)

On April 3, 2015, Johnson, through retained counsel, filed a "Motion for Acquittal Pursuant to Federal Rule of Criminal Procedure 29(a) or, in the Alternative, For New Trial Pursuant to Federal Rile of Criminal Procedure 33." (*See* ECF #80, together with ECF #69, the "Written Acquittal Motions.") Johnson argues that the government failed to introduce sufficient evidence to sustain his conviction and that he received ineffective assistance of counsel. (*See id.*) The government filed its response on May 1, 2015. (*See* the "Response," ECF #81.) The Court originally scheduled a hearing on Johnson's pending motions. After reviewing the parties' submissions, the Court concludes that a hearing is not necessary and that the Oral Acquittal Motion and the Written Acquittal Motions can be properly decided on the papers. *See* Local Rule 7.1(f)(2).

For all of the reasons stated below, the Court **DENIES** Johnson's motions.

3

# ANALYSIS

## A. Johnson is Not Entitled to a Judgment of Acquittal

### 1. Governing Legal Standard

Johnson seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Under this rule, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. Rule Crim. Proc. 29(a). A defendant moving for relief under this rule "bears a very heavy burden." *United States v. Davis*, 577 F.3d 660, 671 (6th Cir. 2009) (internal quotation marks omitted). Indeed, "[i]n reviewing challenges regarding the sufficiency of the evidence presented to the jury" under Rule 29, the Court is "limited to ascertaining whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original). The Court "must view all evidence and resolve all reasonable inferences in favor of the government." *Id.* Finally, the Court "cannot independently weigh the evidence nor substitute its judgment for that of the jury." *Id.*

### 2. Johnson Has Not Satisfied His "Very Heavy Burden" to Show the Evidence at Trial Was Insufficient to Sustain a Conviction

In both the Oral Acquittal Motion and the Written Acquittal Motions, Johnson argues that "[a]lthough the [subject] firearm was located within" his

residence, "the Government did not introduce sufficient evidence to overcome a reasonable doubt that [he] maintained possession of the weapon." (ECF #80 at 5, Pg. ID 1133.) According to Johnson, "the Government was able to provide only circumstantial evidence" that he constructively possessed the revolver, and "no evidence presented linked [him] with the firearm." (*Id.* at 5-6, Pg. ID 1133-1134.) Johnson maintains, as he did at trial, that the bedroom in which the revolver was found belonged to Short, not to him, and thus no rational juror could have found that he constructively possessed the firearm. The Court disagrees.

"Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Kincaide*, 145 F.3d at 771. "Proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession" of that firearm. *Id.* (internal quotation marks omitted). Such possession "may be proved by direct or circumstantial evidence." *United States v. Arnold*, 486 F.3d 177, 181 (6th Cir. 2007). In addition, constructive possession "need not be exclusive but may be joint." *United States v. Paige*, 470 F.3d 603, 610 (6th Cir. 2006).

The United States Court of Appeals for the Sixth Circuit has "frequently held that constructive possession may be shown to exist if the contraband is found

5

in a defendant's bedroom or personal living space." *United States v. Malone*, 308 Fed. App'x 949, 952-953 (6th Cir. 2009) (collecting cases). Thus, the key question here is: did the government present sufficient evidence that Johnson (either individually or together with Cooper) had dominion over the bedroom and the nightstand in which the gun was found? It did.

The government's evidence that Johnson had dominion over the bedroom and nightstand – while circumstantial – was considerable. For example, the government's evidence included the following:

- Johnson and Cooper were involved in a long-term relationship – Johnson had even adopted Cooper's daughter from a previous relationship – and Johnson lived with Cooper and their daughter in the home in which the gun was found. (*See* Tr., ECF #78 at 24-25, Pg. ID 984-985.)
- The officers who arrested Johnson and Cooper testified that the bedroom in which the gun was found appeared to be the master bedroom. (Tr., ECF #77 at 55, Pg. ID 794; 121-123, Pg. ID 860-862.) The officers added that while there were two other bedrooms in the home, one clearly belonged to Cooper's daughter (*see id.* at 61-62, Pg. ID 800-801) and the other appeared unoccupied. (*See id.* at 160-161, Pg. ID 899-901.)
- Cooper admitted that she shared a bedroom and bed with Johnson. (*See* Tr., ECF #78 at 38, Pg. ID 998.) This admission was significant because the government presented evidence that when Cooper was arrested, she retrieved her shoes from the apparent master bedroom in which the gun was found. (*See* Tr., ECF #77 at 55, Pg. ID 794; 62, Pg. ID 801; 127, Pg. ID 866.) Cooper's admission and her act of retrieving her shoes from the

apparent master bedroom served to link Johnson to that bedroom.[1]

- Several personal effects appearing to belong to Johnson were found in the apparent master bedroom containing the gun, including a photograph of Johnson and another male located on a dresser (*id.* at 89, Pg. ID 828; 101, Pg. ID 840), a medical bill with Johnson's name on it (*id.* at 155-156, Pg. ID 894-895), and a claim check receipt listing Johnson as the "claimant." (*Id.* at 157-159, Pg. ID 896-898.)
- Male clothing was found in the apparent master bedroom, and the clothing appeared to be a size that would fit Johnson. (*Id.* at 153-154, Pg. ID 892-893.)
- Male clothing was found in the drawer of the nightstand in which the gun was found. (*Id.* at 123, Pg. ID 862.)

Based on this evidence and testimony, a rational juror could have concluded that Johnson had dominion over the bedroom and nightstand in which the gun was found and that Johnson therefore had constructive possession of the firearm.

The Sixth Circuit has repeatedly held that evidence much like the government presented in this case is sufficient to establish that a defendant constructively possessed a firearm. In *United States v. Harris*, 443 Fed. App'x 111

---

[1] Cooper did testify that (1) the bedroom where the gun was found belonged to her sister, not to her and Johnson, and (2) she and Johnson lived in the third bedroom (the one not occupied by her daughter). (*See* Tr., ECF #78 at 31, Pg. ID 991; 38, Pg. ID 998; 43, Pg. ID 1003.) But a rational juror was free to reject that portion of Cooper's testimony. That testimony was at odds with the evidence that (1) Cooper retrieved her shoes from the bedroom where the gun was found, (2) that bedroom appeared to be the master bedroom, and (3) the third bedroom appeared to be unoccupied.

(6th Cir. 2011), for example, the Sixth Circuit held that there was sufficient evidence of constructive possession where, like here, "the jury heard testimony…that [two] guns were found in a bedroom that contained mail addressed to [the defendant], along with clothing and shoes that appeared to belong to an adult male." *Id.* at 116.

Likewise, in *United States v. Jones*, 21 F.3d 429 (Table) (6th Cir. 1994), the Sixth Circuit found sufficient evidence of constructive possession where (1) the defendant lived in the home where firearms were found, (2) the firearms were found in the bedroom of the defendant's girlfriend, (3) the bedroom contained men's shoes, men's clothing, and documents belonging to the defendant; and (4) "the only other bedroom in the house appeared to be a child's bedroom (thus negating the inference that [the defendant] did not reside in the same bedroom as his girlfriend [and where the guns were found])." *Id.* at *3. *See also United States v. Davis*, 300 Fed. App'x 393, 401 (6th Cir. 2008) (affirming felon-in-possession conviction in part because "[t]he fact that the firearm in the instant case was found in the bedside table in the room shared by [the defendant] and his girlfriend provided sufficient evidence from which a rational juror could conclude that [the defendant] constructively possessed the firearm"); *United States v. Wren*, 528 Fed. App'x 500, 506 (6th Cir. 2013) (affirming felon-in-possession conviction and concluding that although "[the defendant] present[ed] evidence that his live-in

8

girlfriend owned the ammunition and firearm…[the defendant] could constructively possess them through her"); *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) ("at a minimum" evidence that "the firearm that formed the basis for the felon-in-possession charge was found in a drawer of an armoire that was located in a bedroom shared by defendant and his wife" would "have permitted the inference that [d]efendant had constructive possession, if perhaps only jointly with his wife, over a weapon kept in the couple's bedroom"). These cases make clear that the evidence introduced at trial here, when viewed in the light most favorable to the government, was sufficient for a rational juror to conclude beyond a reasonable doubt that Johnson constructively possessed the firearm found in the nightstand.

Johnson has not cited a single case in which a federal court has found insufficient evidence of constructive possession under federal law on facts similar to the ones presented at trial here. Nor has Johnson cited a single decision from any federal court evaluating a claimed insufficiency of evidence of constructive possession under federal law. Instead, Johnson relies on the Michigan Court of Appeals' decision in *People v. Davenport*, 39 Mich. App. 252, 197 N.W.2d 521 (1972). Johnson argues that under *Davenport* the government was required to present evidence that definitively "linked" him to the firearm, and that it failed to do so. (*See* ECF #80 at 6, Pg. ID 11.)

Johnson first raised *Davenport* in the Oral Acquittal Motion. (*See* Tr., ECF #78 at 4-5, Pg. ID 964-965.) At that time, the Court pointed out to Johnson's then-counsel that *Davenport* was interpreting Michigan law, and that "possession for purposes of a Michigan statute" may not "mean the same thing as possession for purposes of [the] federal statute" under which Johnson was charged. (*Id.* at 8, Pg. ID 968.) The Court then specifically instructed Johnson's counsel to explain in post-trial briefing why *Davenport* is relevant in this federal prosecution:

> Mr. Nelson, let me indicate, I am open to any arguments you want to make on People versus Davenport. But let me be clear about my initial inclination. I don't believe that is the governing case. I don't believe that is the governing standard. I am wide open to being proven wrong. *But in order for me to even consider Davenport I would need you to supply an essential link as to why a Michigan court construing a Michigan possession statute is relevant in any way to the construction of the possession concept in a federal statute.*

(*Id.* at 15, Pg. ID 975; emphasis added.)

In an apparent attempt to provide this link, Johnson's newly-retained counsel argues that *Davenport* was "subsequently recognized by the Sixth Circuit Court of Appeals in *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004) and cited in the United States Supreme Court case *Michigan v. Summers*, 452 U.S. 692 (1981)." (ECF #80 at 6, Pg. ID 1134.) But neither of these cases – both of which were initially referenced in the Oral Acquittal Motion (*see* Tr., ECF #78 at 4-5, Pg. ID

964-965) – even remotely suggests that the *Davenport* standard is relevant in a federal prosecution. Indeed, *Yukins* and *Summers* simply recognize that *Davenport* identifies the standard for constructive possession under *Michigan* law; they say *nothing* about whether the Michigan standard has any relevance in a *federal* criminal case. *See Yukins*, 356. F.3d at 708; *Summers*, 452 U.S. at 695, n. 3. Johnson's misplaced reliance on *Davenport* is not nearly enough to overcome the clear line of Sixth Circuit cases cited above holding that evidence much like the government presented here *is* sufficient under federal law to establish that a defendant constructively possessed a firearm.

For all of the reasons described above, the Court denies Johnson's motions for a judgment of acquittal.

**B.     Johnson is Not Entitled to a New Trial**

**1.     Governing Legal Standard**

Johnson moves for a new trial under Federal Rule of Criminal Procedure 33. This rule provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. Rule Crim. Proc. 33(a). "The paradigmatic use of a Rule 33 motion is to seek a new trial on the ground that the jury's verdict was against the manifest weight of the evidence." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). "Generally, such motions [under Rule 33] are granted only in the extraordinary circumstance where the evidence

preponderates heavily against the verdict. A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (internal quotation marks and citations omitted). A court may also grant a Rule 33 motion "where substantial legal error has occurred." *Munoz*, 605 F.3d at 373.

### 2. **Johnson's Motion for a New Trial is Untimely**

A motion for new trial under Federal Rule of Criminal Procedure 33 brought for "any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. Rule Civ. Proc. 33(b)(2). Johnson has not claimed that he is entitled to a new trial due to the discovery of new evidence. Therefore, Johnson had until December 18, 2014, fourteen days after the jury's December 4, 2014, guilty verdict, to file a motion for a new trial under Rule 33. Johnson failed to do so. Instead, while Johnson both orally, and in writing (*see* ECF #69), timely moved for a judgment of acquittal under Rule 29, he first moved for a new trial under Rule 33 more than four months after the jury found him guilty. (*See* ECF #80.) Johnson's motion for a new trial is therefore untimely and the Court denies the motion on that basis.[2]

---

[2] In *Munoz*, *supra*, the Sixth Circuit held that "Rule 33 must be read in conjunction with Federal Rule of Criminal Procedure 45, which provides that '[w]hen an act

### 3. Even if Johnson's Motion for a New Trial Were Timely, He Still Would Not Be Entitled to a New Trial

Johnson appears to move for a new trial on two grounds: (1) there was insufficient evidence to support his conviction (*see* ECF #80 at 5-7, Pg. ID 1133-1136); and (2) he received ineffective assistance of counsel at trial (*see id.* at 7-12, Pg. ID 1136-1140.) Even if Johnson's motion for a new trial were timely – and, to be clear, it is not – the Court would still deny Johnson's motion because he is not entitled to a new trial under either of the grounds he has raised.

#### a. Johnson's Conviction Was Not Against the Manifest Weight of the Evidence

The Court disagrees with Johnson's contention that the verdict was against the weight of the evidence. As described in detail above, the government introduced more than sufficient evidence to support a finding that (1) Johnson had dominion over the bedroom and nightstand in which the gun was found and (2) as a result, Johnson constructively possessed the firearm. Johnson countered with

---

must or may be done within a specified period, the court ... may extend the time ... on a party's motion made ... after the time expires if the party failed to act because of excusable neglect.'" *Munoz*, 605 F.3d at 367 (quoting Fed. Rule Crim. Proc. 45(b)). The court then concluded that having the ineffective assistance of counsel may, in certain cases, constitute "excusable neglect" that could require a court to accept an otherwise untimely Rule 33 motion. *See id.* at 368-369. However, while Johnson has raised an ineffective assistance claim in his instant Motion, Johnson has not claimed that counsel's alleged ineffectiveness prevented him from timely moving for a new trial. Indeed, Johnson has provided no explanation or justification for why he filed his Rule 33 motion so late.

13

testimony from three witnesses: Cooper, Mark McHale ("McHale"), a former boyfriend of Short, and Harley Cummings ("Cummings"), Johnson's brother-in-law. Collectively, these witness testified that Short lived in the house with Johnson and Cooper; that Short, not Johnson and Cooper, occupied the bedroom in which the gun was found; and that Short was visited by male friends who may have left the gun behind. (*See, e.g.,* Tr., ECF #78 at 42-43, Pg. ID 1002-1003; 50-51, Pg. ID 1010-1011; 62, Pg. ID 1022.) However, the government effectively cross-examined these witnesses and created real doubts about the veracity and accuracy of their testimony. For instance, the government exposed Cooper's clear bias in favor of Johnson (*see, e.g., id.* at 42-43, Pg. ID 1002-1003), McHale's checkered past, including multiple criminal convictions (*see id.* at 55-56, Pg. ID 1015-1016), and Cummings's lack of personal knowledge about who lived in which bedroom. (*See id.* at 64, Pg. ID 1024.) The testimony of the defense witnesses was not strong enough to cast serious doubt on the government's circumstantial case, and the jury could very reasonably have disregarded their testimony. This is not the "extraordinary" case "where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593. Therefore, even if Johnson's motion for new trial under Rule 33 were timely, he would not be entitled to a new trial on the grounds that the jury's verdict was against the manifest weight of the evidence.

### b. Johnson is Not Entitled to a New Trial on the Basis of Ineffective Assistance of Counsel

Johnson argues that his defense at trial "was critically and irreversibly impaired" by his trial counsel. (ECF #80 at 7, Pg. ID 1135.) Specifically, Johnson now asserts that his trial counsel "failed to investigate" Short's potential testimony and to call her as a witness at trial. Johnson insists that Short was living in and had access to the home between the time he was arrested and the time police executed the search warrant and found the firearm. (*See id.* at 10, Pg. ID 1138.)

Johnson's argument that his trial counsel failed to investigate Short's role in this case, however, is directly contradicted by the record. Indeed, Cooper testified at trial that Johnson's trial counsel asked her to locate Short for purposes of aiding in Johnson's defense:

> Trial Counsel: [H]ave you had any contact or ability to reach [Short] since [March of April of 2014]?
>
> Cooper: No. Intermittently. The last time I talked to her was about two months ago.
>
> Trial Counsel: *And I asked you to try to locate her for this case, did I not?*
>
> Cooper: *You did.*

(Tr., ECF #78 at 27, Pg. ID 987; emphasis added.) This testimony belies Johnson's argument that his trial counsel failed to attempt to secure Short's

15

cooperation and testimony. Moreover, Johnson has not presented persuasive evidence that Short would, in fact, have offered testimony helpful to his defense[3], and thus he has failed to establish the required prejudice to prevail on his claim of ineffective assistance of counsel. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 688 (1984) (defendant claiming ineffective assistance must show that the "representation fell below an objective standard of reasonableness" and was "prejudicial to the defense").

Finally, Johnson argues his trial counsel was inadequate in other ways. Johnson claims that his trial counsel failed to object when a redacted version of his indictment was presented to the jury (*see* ECF #80 at 10, Pg. ID 1138), but Johnson fails to demonstrate how presenting the unredacted indictment to the jury would have helped his defense. Johnson also argues that his trial counsel was ineffective for not objecting when the Court ruled that certain address information on tax forms belonging to Short had to be redacted before the forms were presented to the jury. (*See id.* at 10-11, Pg. ID 1138-1139.) The address information indicated that Short lived at the residence where the gun was found. (*See* Def. Tr. Ex. 4A.) But Johnson's trial counsel *did* object to the redactions, and

---

[3] Johnson's assertion, for example, that Short had "full and unrestricted" access to the residence where the gun was found between time he was arrested and the gun was found (*see* ECF #80 at 10, Pg. ID 1138), is complete speculation, and has no support in the record.

16

the Court overruled the objection because it determined that the listed address was inadmissible hearsay. (*See* Tr., ECF #78 at 16-22, Pg. ID 976-982.) Johnson likewise argues that his trial counsel "did not elicit testimony from the witnesses that were called as to whether another individual lived or stayed within the home." (ECF #80 at 11, Pg. ID 1139.) But this too is directly contradicted by the record. Indeed, Johnson's trial counsel elicited testimony from Cooper that Short lived in the home in March 2014 and that Short was paying Johnson and Cooper rent. (*See* Tr., ECF #78 at 26, Pg. ID 856.) The problem for Johnson is not that his trial attorney failed to elicit this testimony; the problem is that the jury disbelieved it or found it insufficient to overcome the other evidence linking Johnson to the bedroom and the gun.

Johnson has not established his right to a new trial based on the ineffective assistance of counsel.[4]

---

[4] The Court notes that "normally, claims of ineffective assistance of counsel are not raised until direct appeals are exhausted, and then via 28 U.S.C. § 2255. They are not typically addressed in a motion for new trial under Federal Rule of Criminal Procedure 33." *United States v. Santana*, 962 F.Supp.2d 906, 924 (E.D. Mich. 2013). While an ineffective assistance claim may, in an appropriate case, rise to the level of satisfying Rule 33, *see Munoz*, *supra*, Johnson has failed to establish that this case meets such a standard.

## CONCLUSION

For all of the reasons stated above, **IT IS HEREBY ORDERED** that the Johnson's Oral Acquittal Motion and the Written Acquittal Motions (ECF ## 69, 80) – including Johnson's motion for a new trial –are **DENIED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 12, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 12, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113
